SCHMIEDICKE v CLARE SCHOOL BOARD

Docket No. 197336. Submitted January 7, 1998, at Lansing. Decided February 24, 1998, at 9:05 A.M.

Gerald E. Schmiedicke brought an action in the Clare Circuit Court against the Clare School Board and others, alleging that violations of the Open Meetings Act (OMA), MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, occurred when the Personnel and Policy Committee (PPC) of the school board met in private to review methods for evaluating school administrators and the length of administrators' employment contracts and when school board members each prepared an evaluation of the school district superintendent in private, which evaluations were then used to compile a statistical summary that the board members used when deciding whether to retain the superintendent. The court, Kurt N. Hansen, J., after a bench trial, found in favor of the defendants and dismissed the action. The plaintiff appealed.

The Court of Appeals *held*:

1. A public body, when making a decision effectuating public policy, must make the decision at an open meeting, unless there is an applicable exception. MCL 15.263(1),(2),(3), 15.268; MSA 4.1800(13)(1),(2),(3), 4.1800(18).

2. The PPC was subject to the OMA when it met to review administrator evaluation methods and the length of their employment contracts. The PPC is a public body in the absence of a challenge to the trial court's finding to that effect, the presence of all three members of the PPC constituted a quorum, their deliberations involved the formulation or effectuation of public policy, and none of the exceptions to the public meeting requirement of the OMA applied.

3. The school board members, when each prepared the superintendent evaluation form, did not meet so as to be subject to the OMA.

4. The trial court did not err in denying the plaintiff's request for injunctive relief to ensure future compliance with the OMA. There is no reason to believe that the defendants will deliberately fail to comply with the OMA.

5. Attorney fees and costs should be awarded to the plaintiff and against the school board pursuant to MCL 15.271(4); MSA 4.1800(21)(4).

6. The matter must be remanded for the entry of appropriate declaratory relief and for an award of attorney fees and costs.

Reversed in part, affirmed in part, and remanded.

STATUTES — OPEN MEETINGS ACT—PUBLIC MEETINGS.

The Open Meetings Act requires a public body making a decision effectuating public policy to make the decision at a meeting open to the public, unless an exception specified by the act applies (MCL 15.263[1],[2],[3], 15.268; MSA 4.1800[13][1],[2],[3], 4.1800[18]).

*Foster, Swift, Collins & Smith, P.C. (by Charles E. Barbieri),* for the plaintiff.

*Hughes & Hoerauf, P.C. (by Jaynie Smith Hoerauf),* for the defendants.

Before: FITZGERALD, P.J., and O'CONNELL and WHIT-BECK, JJ.

FITZGERALD, P.J. Plaintiff appeals as of right the lower court's ruling that defendants did not violate the Open Meetings Act (OMA), MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, when defendant Clare School Board's Personnel and Policy Committee (PPC)[1] met in private to review methods for evaluating school administrators and the length of employment contracts with administrators and when there were private evaluations of the school district's superintendent. We reverse in part, affirm in part, and remand.

I

At its March 21, 1994, meeting, the seven-member defendant school board passed an amended motion

---

[1] The PPC was comprised of school board members Kathy Poet, Betty Mussell, and James Walter.

delegating to the PPC the task of reviewing whether the school district should retain its current method for evaluating school administrators and whether the length of administrator contracts should be changed. At the PPC's April 14, 1994, meeting, the PPC refused plaintiff entrance to the meeting. It was at this meeting that the PPC formed its recommendation to leave the administrator evaluation system and the length of administrator contracts intact. Upon receiving the PPC's recommendation at its April 18, 1994, meeting, defendant school board took no action on it, apparently because the PPC did not recommend any changes.

The OMA provides that a public body, when making a decision effectuating public policy, must make the decision at an open meeting, unless there is an applicable exception. MCL 15.263(1), (2), and (3); MSA 4.1800(13)(1), (2), and (3). Therefore, in order to resolve this issue, we must determine (1) whether the PPC acted as a "public body," (2) whether there was a "meeting" of the PPC, (3) whether a "decision" effectuating public policy was made by the PPC, and (4) whether any exceptions are applicable. In making these determinations, we note that the "fundamental purpose" of statutory construction is to "assist the court in discovering and giving effect to the intent of the Legislature." *In re Certified Question*, 433 Mich 710, 722; 449 NW2d 660 (1989). In order to effectuate the legislative intent regarding the OMA—facilitating public access to governmental decision making—the statute should be broadly interpreted and its exemptions strictly construed. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 223; 507 NW2d 422 (1993). A public body has the burden

of proving that an exemption exists. *Booth Newspapers, supra.*

### A. PUBLIC BODIES

Here, the trial court held that the PPC was a public body as defined in MCL 15.262(a); MSA 4.1800(12)(a). Therefore, there being no challenge to this finding, we assume for purposes of this opinion that the PPC was a public body.

### B. MEETINGS

The second step in our analysis requires a determination regarding whether the PPC's deliberations constituted a "meeting" under the OMA. "Meeting" is defined in the OMA as "the convening of a public body at which a quorum is present for the purpose of deliberating toward or rendering a decision on a public policy." MCL 15.262(b); MSA 4.1800(12)(b); *Federated Publications, Inc v Michigan State Univ Bd of Trustees,* 221 Mich App 103, 116; 561 NW2d 433 (1997). Because the PPC is a public body, the presence of the three persons who comprised the entire committee means that a quorum of the PPC was present at the PPC's meeting on April 14, 1994. Therefore, the trial court incorrectly concluded that a quorum was not present. We therefore hold that, a quorum of a public body being present, the deliberations of the PPC constituted a meeting under the OMA.

### C. DECISIONS

Because a quorum of the PPC was present at the April 14, 1994, meeting we must next determine whether the PPC met to decide or to deliberate public policy. "Decision" is defined in the OMA as a "determination, action, vote, or disposition upon a motion,

proposal, recommendation, resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy." MCL 15.262(d); MSA 4.1800(12)(d).

Here, it is clear that a decision regarding the method by which administrators are evaluated affects public policy. Likewise, deliberations regarding the length of contracts offered to employees involves the formulation of public policy. By reserving the right to finalize the PPC's recommendation, defendant school board recognized that its decision regarding how administrators were evaluated and the length of administrator contracts involved a governmental function. Although resolution of these matters is a governmental function, we must decide whether defendant school board delegated the PPC any decision-making authority.

Testimony at trial, although equivocal, indicated that defendant school board did not intend to delegate final decision-making authority to the PPC. However, there was testimony by a school board member that, because the PPC recommended no change with respect to either policy presented to it for review, defendant school board believed that it did not have to take any action on the PPC's recommendation. In other words, by failing to vote, defendant school board "affirmed" the PPC's recommendation to leave intact the current methods for evaluating administrators and the length of administrator's contracts. Thus, at the April 18, 1994, meeting, defendant school board renewed each administrator's contract for two terms in accordance with its current policy.

The primary purpose of the OMA is to ensure that public entities conduct all their decision-making activities in open meetings and not simply hold open meetings where they rubber-stamp decisions that were previously made behind closed doors. See *Booth Newspapers, supra* at 222; *Wexford Co Prosecutor v Pranger*, 83 Mich App 197, 204; 268 NW2d 344 (1978). Here, defendant school board's referral to the PPC for a recommendation was a delegation of authority to perform a governmental function. The focus of the inquiry is the authority *delegated* to the PPC, not the authority it *exercised*. The PPC failed to openly deliberate on the governmental function that the defendant school board had delegated to it. Subsequently, the defendant school board adopted the PPC's recommendation. The defendant school board's adoption of the recommendation effectively foreclosed any involvement by members of the public and essentially meant that the decision made by the PPC at a closed meeting was a fait accompli. *Booth Newspapers, supra* at 229. Consequently, the PPC made closed-session deliberations and decisions in violation of the OMA.

### D. EXCEPTIONS

Decisions made by a public body must be made at open meetings, MCL 15.263(2); MSA 4.1800(13)(2), while deliberations by a quorum of a public body's members may be held behind closed doors only if the purpose of the meeting fits within one of the statutory exceptions provided in MCL 15.268; MSA 14.1800(18). None of the exceptions are applicable in this case.

II

Next, plaintiff contends that defendant school board violated the OMA by allowing individual members of the board to prepare superintendent evaluation forms in private that were later used to compile a statistical summary that formed the basis of the decision to retain the superintendent.

### A. PUBLIC BODIES

There is no question that defendant school board is a public body under the OMA.

### B. MEETINGS/DECISIONS

We first recognize that, although it was not mandatory for defendant school board members to participate in the evaluation procedure, the individual evaluation procedure that they used resulted in the absence of any deliberations at a public meeting. We also recognize that selection of a school superintendent mirrors the presidential search process at the university level and therefore it is a governmental function. *Booth Newspapers*, *supra* at 226. We further recognize that, although the compilation of the statistics was itself apparently a clerical function, the individual evaluation process arguably allowed the members of the school board to shun accountability because the evaluation forms were thrown away after the statistical compilation was made. The use of the evaluation forms and the subsequent compilation resulted in the decision to renew the superintendent's contract.

Perhaps most importantly, we recognize that in *Booth Newspapers*, *supra* at 229, the Michigan Supreme Court found that "round-the-horn" decisions

and conferences could in fact constitute meetings at which decisions are made:

> Even members of the committee [the University of Michigan Board of Regents' Presidential Selection Committee] acknowledged that its "round-the-horn" decisions and conferences achieved the same effect as if the entire board had met publicly, received candidate ballots, and "formally" cast their votes.[2]

Nevertheless, we conclude that there are significant differences between the evaluations of the superintendent that the individual defendants prepared in this case and the "round-the-horn" deliberations that the Presidential Search Committee undertook in *Booth Newspapers, supra.* Here, there were no "round-the-horn" deliberations, decisions, or conferences. Rather, each individual school board member who chose to do so privately completed the evaluation forms. Thus, we can find no "meeting," even in the broadest sense, that actually occurred.[3]

III

Lastly, plaintiff claims that the trial court should have awarded him attorney fees and actual costs, and

[2] See also the Court's statement that the "selection of a public university president constitutes the exercise of governmental authority, regardless of whether such authority was exercised by Regent Brown, the nominating committee, the full board, or even subcommittees," *Booth Newspapers, supra* at 226, that the "only part of the decision-making process that occurred in public was . . . Dr. Duderstadt's selection," and that his "elevation to the position of university president was a fait accompli" by the time the public meeting electing him to the post was held. *Id.* at 229.

[3] Having found that no meeting occurred and no decisions were made during the individual evaluation process, we need proceed no further. We do note, however, that the various exceptions to open deliberations which might have applied, MCL 15.268(a) and (f); MSA 4.1800(18)(a) and (f), are inapplicable because the superintendent did not request confidentiality.

that it should have issued an injunction ensuring defendants' future compliance with the OMA. We affirm the denial of an injunction to ensure future compliance with the OMA. There is no reason to believe defendants will deliberately fail to comply with the OMA.[4] The legal remedy of declaratory relief is adequate. *Peninsula Sanitation, Inc v City of Manistique,* 208 Mich App 34, 43; 526 NW2d 607 (1994) (one prerequisite to injunctive relief is lack of an adequate remedy at law). However, attorney fees and costs should be awarded to plaintiff and against defendant school board pursuant to MCL 15.271(4); MSA 4.1800(21)(4). *Menominee Co Taxpayers Alliance, Inc v Menominee Co Clerk,* 139 Mich App 814, 820; 362 NW2d 871 (1984).

Reversed in part, affirmed in part, and remanded for entry of appropriate declaratory relief and for a determination regarding attorney fees and costs. We do not retain jurisdiction.

---

[4] Defendant school board altered the method of evaluating and retaining its administrators by the date of trial.